UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LABORERS' DISTRICT COUNCIL OF
OHIO, *et al.*,

      Plaintiffs,

v.                                    Case No.: 2:17-cv-099
                                            JUDGE SMITH
                                            Magistrate Judge Vascura

**ROADSAFE TRAFFIC SYSTEMS, INC.,**

      **Defendant.**

**OPINION AND ORDER**

This matter is before the Court upon RoadSafe Traffic Systems, Inc.'s ("RoadSafe") Motion to Dismiss First Amended Complaint for lack of subject matter jurisdiction (the "Motion") (Doc. 12). Plaintiffs Laborers' District Council of Ohio ("District Council") and Laborer's International Union of North America, Local 423 ("Local 423") opposed the Motion to Dismiss (Doc. 17) and RoadSafe replied in support (Doc. 21). The Motion is now ripe for review. For the following reasons, Defendant's Motion is **GRANTED**.

**I.    BACKGROUND**

This dispute arises from the alleged breach of a Collective Bargaining Agreement ("CBA") (Doc. 12-2) executed on February 18, 2013, by RoadSafe, Local 423, and District Council. (Doc. 9, Am. Compl. ¶¶ 59–60).

RoadSafe is an "employer" as defined by Section 2(2) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2). Road Safe provides traffic control and pavement marking services to state governments, public and private utilities, and railroad companies throughout the United States. (Doc. 9, Am. Compl. ¶¶ 6, 59–60). Plaintiffs District Council and Local 423 are

"labor unions" within the meaning of the National Labor Relations Act, 29 U.S.C. § 152(5). (*Id.* ¶ 8). From 2009 to 2015, RoadSafe conducted Ohio operations out of its Shadyside office located in the Belmont County. (Doc. 12-1, Def.'s Mem. in Supp. at 4). After contracting with District Council and Local 423, RoadSafe hired union workers to perform ancillary traffic control services for an Ohio highway project that was commenced in January 2013 and completed in January 2015. (Doc. 12-3, Decl. of Arthur Miller ¶ 8).

As part of this work, the parties entered into the CBA, which covered the relationship between RoadSafe and union employees. (*Id.* ¶ 6). In January 2015, after the Ohio highway project was completed, RoadSafe sold its Shadyside office. (*Id.* ¶ 8). On May 26, 2015, RoadSafe Accountant Terry Brumfield ("Brumfield") stated in writing to the Ohio Laborers' Fringe Benefit Programs ("OLFBP") that RoadSafe was no longer conducting any work covered by the CBA in Ohio. RoadSafe and Plaintiffs dispute whether Brumfield's writing provided sufficient notice under Article XVI of the CBA.[1] In December 2016, Plaintiffs discovered that RoadSafe was performing work in Ohio, which Plaintiffs contend was covered by the CBA. (Doc. 9, Am. Compl. ¶ 43). Plaintiffs allege that this work violated the CBA's terms due to RoadSafe's failure to abide by manpower and local-workforce ratios; failure to pay proper wages; failure to pay fringe benefits; failure to deduct and remit initiations, dues, and

---

[1] The termination provision of the CBA, Article XVI, states:

> All terms and conditions of this Agreement, as amended, shall be effective as of the first (1st) day of May, 2013, and shall remain in full force and effect until the first (1st) day of May, 2016, and shall continue to remain in full force and effect from year to year thereafter, *unless either party notifies the other party in writing* of its intention to amend, modify or terminate said Agreement at least sixty (60) days prior to expiration of this Agreement. (Emphasis added).

In conjunction with the above, Article I states:

> Any Contractor who is or becomes bound by the terms of this Agreement by its membership in the Labor Relations Division of the Ohio Contractors Association or who becomes bound as an individual Contractor signatory to this Agreement shall be bound by all terms and conditions of the Agreement or subsequent Agreements *until or unless proper termination notice is given*. (Emphasis added).

assessments, failing to abide by the union security clause; and failure to engage in the grievance-and-arbitration procedure as required by the CBA (*Id.* ¶¶ 49–51).

When Plaintiffs discovered RoadSafe was performing work in Ohio allegedly covered by the CBA, they presented RoadSafe with a grievance alleging non-compliance with the CBA as well as a demand for arbitration. (*Id.* at ¶¶ 43, 45). After RoadSafe refused to engage in the grievance process or submit to arbitration, Plaintiffs initiated the instant case under the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and sought enforcement of the CBA. RoadSafe filed a Motion to Dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction. The Court now considers the Motion pending before it.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Southwest Detroit Hosp.,* 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990)). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016).

A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations. *Glob. Tech., Inc. v. Yubei (XinXiang)*

*Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). The plaintiff has the burden of establishing jurisdiction in order to survive the motion to dismiss. *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

### III. DISCUSSION

In its Motion, RoadSafe argues that it terminated the CBA in January 2015 when Brumfield notified the OLFPB in writing that RoadSafe would no longer be conducting work in Ohio. (Doc. 12-1, Def.'s Mem. in Supp. at 6). As such, RoadSafe contends that the traffic control services that RoadSafe performed in Ohio between 2015 and 2016 were not covered by the CBA. (*Id.*). In addition, RoadSafe also points out that it had performed limited utility work out of its Shadyside office in 2014 and 2015, but the workers performing said work were not covered by the CBA, nor did Plaintiffs ever contend that those workers were covered. Thus, the crux of RoadSafe's argument is that Plaintiffs' Amended Complaint raises a threshold representational issue; i.e., whether the employees RoadSafe hired *after* January 2015 were part of the bargaining unit represented by Plaintiffs. (*Id.* at 8). RoadSafe cites the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(b) as granting the National Labor Relations Board ("NLRB") primary jurisdiction to determine the composition of a collective bargaining unit. (*Id.* at 13). Accordingly, RoadSafe alleges that Plaintiffs' claim of material breach is improperly before this Court.

4

Plaintiffs Local 423 and District Council allege that RoadSafe did not provide adequate notice of intent to terminate the CBA, and therefore the agreement was still in effect when RoadSafe conducted traffic control services for an Ohio railroad in 2015. (Doc. 9, Am. Compl. ¶ 26). Plaintiffs contend that RoadSafe's failure to comply with the terms of the CBA—as well as RoadSafe's refusal to submit to arbitration—amounts to a material breach of the CBA. (*Id.* ¶¶ 41, 46–51). Furthermore, Plaintiffs argue that this Court has subject matter jurisdiction to resolve this dispute because Plaintiffs' claim is solely contractual in nature. (Doc. 17, Pls. Mem. Contra at 8).

Under the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185 (a). Conversely, when a dispute is primarily representational in nature, it falls within the exclusive jurisdiction of the NLRB. *DiPonio Const. Co. v. Int'l Union of Bricklayers & Allied Craftworkers, Local 9*, 687 F.3d 744 (6th Cir. 2012) (citing *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959)).

Whether a dispute is representational or contractual in nature is often a close determination. However, most courts take the position that if a dispute primarily relates to contract interpretation, although potentially implicating representational issues, it is still proper for a federal court to exercise its jurisdiction over the matter. *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 70 F. Supp. 3d 327, 342 (D.D.C. 2014), *aff'd*, 815 F.3d 834 (D.C. Cir. 2016) (citing cases).

On the other hand, the Sixth Circuit has "identified two scenarios in which a dispute will be treated as 'primarily representational'" and thus within the exclusive jurisdiction of the NLRB. *DiPonio*, 687 F.3d at 750 (quoting *Int'l Bhd. of Elec. Workers, Local 71 v. Trafftech, Inc.*, 461 F.3d 690, 695 (6th Cir. 2006)). The first is where the NLRB has already exercised jurisdiction over a matter and is either considering the matter or has already decided it. *Id*. The second scenario arises where the issue requires an "initial decision" regarding representational issues. *Id*. The latter category is comprised of situations where a court—and not the NLRB—is asked to decide whether a person or group of persons is a proper collective bargaining representative in the first instance. *Id.* RoadSafe maintains that the case at bar resides exclusively within the second category.

In *DiPonio*, an employer refused to bargain with a union after the collective bargaining agreement between the two expired. *Id.* at 747. The employer argued that because the union did not have majority support from the collective bargaining unit, the employer was under no obligation to continue to bargain. *Id*. Conversely, the union asserted that it did have majority support and therefore the employer's refusal to bargain constituted an unfair labor practice. *Id*. The employer filed suit in federal district court and sought a declaration that the union had violated the terms of the agreement by refusing to acknowledge that the employer had lawfully terminated the agreement. *Id.* at 748. The district court dismissed the employer's complaint, and the Sixth Circuit affirmed, because the matter was "primarily representational" and therefore within the exclusive jurisdiction of the NLRB. *Id*. at 751. The court stated that, as a rule, "a district court should not exercise jurisdiction where it could not determine whether a CBA had been violated 'without first deciding whether the union was elected as the employees' bargaining

6

representative.'" *Id.* at 750 (quoting *Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.,* 845 F.2d 1250, 1253 (4th Cir. 1988)).

Here, the Court disagrees with Plaintiffs' position that this matter is primarily contractual due to the fact that they are seeking "contractual relief, i.e., specific performance of a broad arbitration clause contained within the collective bargaining agreements or, alternatively, damages for breach of contract due to complete repudiation." (Doc. 17, Pls. Mem. Contra at 1). Further, Plaintiffs argue that this Court is faced with one issue: "is RoadSafe bound to collective bargaining agreements requiring it to arbitrate contractual disputes or do NLRA-based defenses preclude such enforcement?" (*Id.* at 8). The Court disagrees with this characterization of the issues because it presupposes that a valid collective bargaining relationship existed between the parties.

The facts of this case raise several potential issues pertaining to the question of whether Plaintiffs indeed represented RoadSafe employees at the time of the alleged breach of the CBA. RoadSafe has identified those issues to include the following:

> "(1) whether the January 2015 shutdown at the Shadyside operation operated to terminate the underlying collective bargaining relationship; (2) whether recognition of Plaintiffs as the collective bargaining representative of the new Columbus branch would constitute unlawful domination or assistance in violation of § 8(a)(2) of the NLRA; (3) whether employees performing traffic control work related to railroad and utility maintenance activity share a community of interest sufficient to lawfully be included in a bargaining unit with pavement marking employees; and (4) whether the shutdown of an operation covered by an 8(f) prehire agreement terminates that agreement under application of the "one (or zero) man unit rule."

(*Id.* at 5). Only after all of the above-mentioned representational issues are decided will the trier of fact be faced with the comparatively simple issue of whether a breach occurred. Following the framework of *DiPonio* and *Trafftech*, it is the Court's view that representational issues predominate in this dispute. Plaintiffs are not able to overcome this reality by "simply referring

7

to the claim as a breach of contract[.]" *Paper, Allied Indus., Chem. & Energy Workers Int'l Union v. Air Prod. & Chemicals, Inc.*, 300 F.3d 667, 675 (6th Cir. 2002) (quotations omitted) (citing *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Olympic Plating Indus., Inc.*, 870 F.2d 1085, 1089 (6th Cir. 1989)). Accordingly, the NLRB has exclusive jurisdiction to adjudicate Plaintiffs' claims.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction is **GRANTED**. The Clerk shall remove Document 12 from the Court's pending motions list and close this case.

**IT IS SO ORDERED.**

           */s/ George C. Smith*
           **GEORGE C. SMITH, JUDGE**
           **UNITED STATES DISTRICT COURT**